Welcome, ladies and gentlemen, to the Court of Appeals for the Fifth Circuit. Glad to have you here today. For the benefit of those who have not argued here before, let me point out that we have this yellow light. You need to keep an eye on it because when it comes on, that means you've got two minutes to complete your arguments. These arguments are being recorded for the purposes of helping us write in the opinions that come out of these proceedings. So you need to stay close to the microphone because if you walk around, we'll lose your argument. And finally, I would mention that rebuttal is for rebuttal only, and we don't expect you to bring up any new issues in rebuttal that have not previously been addressed either by you or your opponent. And with that, I call the first case of the day, and that's United States of America v. Ortega. And, Mr. Gross, we'll hear from you. Thank you, Judge Gowley. Good morning. May it please the Court. My name is Michael Gross. Along with Mr. Smith, we represent the appellant in this case, Adolfo Ortega, on his direct appeal from the Western District of Texas, San Antonio Division. With the Court's permission, I will orally argue points of error one and two, rely upon the brief for point of error three. We've reserved five minutes for rebuttal, Your Honors, for Mr. Smith. So this case, we have a police officer who relied upon in an affidavit CI-2 out of three CIs and a person four. The CI-2, according to the affidavit, says that he saw a delivery of controlled substance at Mr. Ortega's house. The problem with the affidavit in this case, as we stated in our brief, is that the police officer affiant on the search warrant affidavit did not divulge in the affidavit that the police officer never spoke to CI-2. Another detective spoke to CI-2, and that's the whole problem in this case, the fact that the police officer in his affidavit in support of the search warrant never informed the magistrate judge that the police officer never spoke to CI-2, that it was another police officer. This case is very similar to the Davis case that's cited in our brief. The Davis case, Ninth Circuit case out of 1983, is practically on point with the facts of our case. In the Davis case, it was an importation of hashish oil case, similar to our case, which is also a controlled substance case. In the Davis case, the court was confronted with exactly our kind of facts. The police officer put in his affidavit in support of the search warrant that he did interview the CI, when, in fact, it was another police officer who interviewed the CI. The Ninth Circuit was very nice and forthcoming on the fact that they said, look, the Ventresca case teaches us that there's no problem at all with a police officer relying upon another police officer's interview of a CI, as long as the police officer affidavit puts in his search warrant affidavit that that police officer didn't interview the CI, another police officer did. So in the Davis case, they said we would never have to reach a problem in this case if the police officer had merely stated in the affidavit he personally didn't interview the CI, but another police officer did. The court said that the Franks case, which is cited in both briefs. Doesn't that really go, I mean, maybe to willfulness or the intention, an intentional falsehood, that if he knew he didn't have to lie and didn't have to misrepresent the facts but did, makes it somehow less willful or reckless? Great question, Judge Shelley. And the Davis court addressed that squarely, and they said it's an intentional falsehood. They said the police officer knew he didn't, the police officer affidavit knew he never interviewed the CI, yet he didn't say that in the affidavit. He intentionally meant to say what he said. Yes, sir. He said what he said. He must have intended to mean to say what he said. That's correct, Judge Shelley. But is there an intentional, is there intent to lie within that kind of statement when there was no motive for him to lie? Well, the Davis court said we don't have to reach whether or not there is an intentional motive to lie. The Davis court said it's clear that the police officer affiant never interviewed the CI, yet in the affidavit the police officer affiant said he did interview the CI. The Davis court clearly said we find that to be an intentional false misrepresentation in the search warrant affidavit. But it's false. There's no question about that. It's false. Yes, sir. Yes. But did the police officer intend to mislead the judge? The Davis court said they didn't have to reach intent because it was very clear that it was a false misrepresentation that was intentional by the police officer with respect to the language in the affidavit, Judge Prado. What they said was had the police officer said in the affidavit. That doesn't answer the question that Judge Prado posed though, does it? I mean, the Ninth Circuit that you're quoting, to just simply say that it is false, it is clearly false because it misrepresents the actual facts that occurred, that doesn't answer the question ultimately that Judge Prado had. Well, Judge Gialli, Judge Prado, that it is intentional misrepresentation. And because of that intentional misrepresentation, the Davis court said that that vitiates the viability of the search warrant and everything that followed from it. They said that if you don't have valid statements in a search warrant, then that does not allow the magistrate who decides whether or not to issue the search warrant to do their job properly. But I thought that the Franks case, the first prong, there were two prongs. The first one was it must show that the allegations in the affidavit were deliberately deliberate falsehoods are made with a reckless disregard for the truth. We know it was false. But was it a deliberate falsehood and was it a reckless disregard for the truth? You say Davis in the Ninth Circuit says no, but the Supreme Court in Franks v. Delaware seems to require some sort of intent to mislead. My reading of the Franks case, Judge Prado, is that the first prong is met that there were false affidavits in our affidavit. The second prong is met under Franks because the false statements were made with a reckless disregard for their truth. And the third prong in Franks is met because the false statements were material to the evaluation of probable cause for the magistrate in issuing the warrant. The Davis case incorporated those three prongs from Franks and said that in this particular case, where the police officer didn't divulge, just like in Franks, by the way, where the police officer didn't divulge that another police officer interviewed the affidavit, not interviewed the C.I., and the police officer affidavit who did the search warrant affidavit did not interview the C.I., they said that failure is intentional and the search warrant must be invalidated. So it's our position, Judge Prado, Judge Jolly, that we've met the three prongs of the Franks case because we've shown the statements are false in the affidavit, the false statements were made with reckless disregard for the truth, and the false statements were material to the evaluation of probable cause. Did I answer that question all right, Judge Prado? Great. So in the Davis case... You did the best you could. Thank you, sir. The Davis case also says the failure to put in the affidavit and score the search warrant that the police officer affiant was not the one that interviewed the C.I., but another police officer did, failure to do that makes it impossible for the magistrate to evaluate the existence of probable cause. And the Davis case also made an important statement, and it said that the fact that probable cause did exist in that case in Davis and could have been established by a truthful affidavit did not cure the error of the affiant police officer failing to state in the affidavit and score the search warrant that another police officer interviewed the C.I., not the police officer affiant. Now, the magistrate judge never made a finding with whether this was reckless and intentional. That's correct, Your Honor. My reading of the R&R says that. That's correct, Judge Daly. And should we then remand for further explanation by the magistrate judge? That's certainly a possibility, Your Honor. She heard all the witnesses. Is it he or she? She did, Judge Pam. She heard all the witnesses. So, I mean, she could make that determination as to whether it was intentional and reckless disregard of the truth or whether it was false within the perimeters of acceptability. I will say, Judge Daly, that's exactly what the Ninth Circuit did in Davis. They said we're going to remand it back so that the district court or the magistrate judge could make a determination and flesh that out. It went back on the same facts as our case in Davis. The magistrate judge and the district court said we don't find it intentional. We don't find it material. We don't think there's a problem. Then it came back up to the Ninth Circuit, and they said we disagree on the facts of the case. But to be fair to Judge Mathie, Magistrate Mathie, all she heard from was the police officer affiant. She just heard from Detective Parkinson. She never heard from Detective Jacinto, who was the one that actually interviewed CI2. She never heard from any of the CIs, of course, because she determined that there was no reason to divulge their identifications. And she never heard from Person of Interest 4 that was involved in the case. So it's unclear why it was such a limited amount of testimony that she heard. Well, that wouldn't necessarily go to those other witnesses. It would not necessarily go to the intent to lie beyond the facts that were actually before, would it? Well, there could be a discussion perhaps between Detective Jacinto and Detective Parkinson. I'd be surprised, but there could have been a discussion about what's put in the affidavit kind of like there was in Davis. However, it's our position, respectfully, Judge Jolly, that there is enough information before this court that clearly shows that it was intentional by the police officer, just like it was found to be intentional in the Davis case by the Ninth Circuit. It's practically on point with us. Although we're remanded, it's exactly what was done in the Davis case, Your Honor. It certainly was. Does it matter? In this case, the falsehood was, I want to say a technical falsehood because it was false, but the actual information for probable cause, it was just the wrong officer. But had it been the other officer, as you said, it would have been okay because it was the officer who said a confidential informant who's reliable and given me information in the past told me, and it would have been okay. It's just that it was the wrong officer who was there when the information was given but was not the actual officer it was given to. So it's not like they created probable cause. There might have been probable cause had it been the right policeman to sign the affidavit. So does that make a difference? In this case, of course, it does, Judge Prado. In this case, the CI2 only spoke Spanish, mostly, and the Detective Parkinson, who is the affiant on search warrant, said he didn't speak Spanish, and he had to rely upon the interpretation by the other police officer, Detective Jacinto, on what was said. None of that was put in the affidavit. And Judge Prado, in the Davis court, the district judge and magistrate judge tried to argue just that, that, look, this wasn't a big deal. A police officer heard it anyway. Does it really matter that the police officer affiant didn't put in there that he's not the one that actually interviewed the CI, that it was another detective? And the Ninth Circuit said it's huge, and they said also that Franks says that it's a big problem also. So I think the distinguishing factor, Judge Prado, is Detective Jacinto, the affiant on the search warrant affidavit, didn't speak Spanish, and he relied completely on the other police officer for the interpretation of that. Point of error number two, the refusal to disclose the CI's identity. I think, to be fair, Judge Mathie ruled that the defense was not entitled to a Franks hearing. But I think, to be fair, that was a full-blown Franks hearing. It was not a pre-Franks kind of hearing. Everybody testified about what problems there might be with the CI's on the failure to disclose the CI's identification. And under the three-prong test that this court has placed in Orozco and in the Edwards case, we do not meet prong one. I'll tell you that right now. We'll admit that right now, because prong one was the CI involved in the offense that was charged in the indictment. It wasn't. The drug buyout with the CI was the day before. The indictment alleged the next day, April 9th. But we do meet the other two prongs squarely. We do say that the testimony of the CI would have assisted the defense in the determination of a cause in this case, and that is the probable cause determination. What exactly happened? Because the police officers were not present on the day before the search warrant when the CI and Person 4 did the buy, supposedly, with the appellant. And so it's our position that we were not able to question the detective about the CI's reliability because the detective repeatedly said at the suppression hearing that he didn't know the reliability of the CI. He didn't know other than what Detective Jacinto had told him about an unknown number of times he'd used them in the past. And the other main issue on prong three is that there was no showing that the CI was still being used and that there was any kind of safety issue with disclosing the information on the CIs because Detective Parkinson testified that there was no indication they were still being used, and he said there's no indication that there was any kind of danger to the CIs had their information been divulged. So it's our position that, especially with Person 4, who was not even a CI, that their information should have been divulged to the defense. Thank you all very much. Okay. Thank you, Mr. Gross. Mr. Gay, representing the United States, we'll hear from you. Good morning. May it please the Court. I'd like to begin by talking, I guess, about the three prongs of Frank's, and I believe that in this case the defense is wanting to skip over the issue of whether it was reckless or intentionally false and just say that any time there is a statement that turns out to be untrue that it is always false, intentionally false, recklessly false. And I would suggest to this Court that if you look at Judge Matthey's report and recommendation that was adopted by the district court, she applies Leon good faith at the end, which clearly suggests that she implicitly found that it was not intentionally or recklessly false. Can you have good faith when the policeman knows it's not true? I mean, how can you say it was a good faith lie? Is that what we're getting to? I mean, it was he did not get the information. Some other policeman got the information. So it's obvious the policeman knew he was giving false information. How can that be good faith? Well, number one, I do think that this case has a little bit of grayness to it in the sense that he was present when CI2 was being interviewed by the other detective. He was there, and obviously he works in the gang unit. The gang unit officers executed the warrant. He wasn't the only one there. So the collective knowledge of the officers, while maybe not directly applicable in this context, certainly suggests that this was part of an investigation. I think that if you were to take the affidavit and simply remove, as you pointed out a moment ago, that one little piece, it's entirely accurate. And in fact, Judge Matthey's order suggests the idea that even the information provided was sort of self-authenticating as to veracity because it recounts an actual observation by CI2 that he saw the defendant walk out of his house holding the cocaine and hand it to the passenger in the car. And so where you have a situation where the firsthand information, this is not in the sense of an anonymous tipster. This is someone who was present, who observed the facts, and those facts were accurately relayed in the affidavit with the perhaps, and I think there's no doubt it was imprecise. I think those are the words Judge Matthey uses. And it could have been much better. And obviously law enforcement are not lawyers. They make mistakes. That's why there's tens of thousands of cases talking about Leon, is that they make mistakes. And this was a mistake. But I think the question that we have to get to is was it so reckless or intentional as to prevent the application of Leon Goodfaith in this case? And in my reading of the record, that in fact there was probable cause throughout this affidavit. In fact, what also supports the credibility and the determination as to veracity of the informant was the significant amount of investigation and surveillance that was recounted in the second half of the affidavit where he sets forth the fact that they went to the location, they observed the hand-to-hand deliveries based on his training and experience. These were narcotics transactions. He queried the database. He determined who lived there. There in fact were a second corroboration was that another informant had provided information that the defendant had received a kilo of cocaine just recently. And all of this suggests strongly that in this case, this was not a material, deliberate, or reckless falsehood. It was imprecise. It was more than imprecise. It was false. As to the overall, it was untrue in the sense although he was present. You say it wasn't true, I say it's false. What's the difference? Yes, Your Honor. But in this case, it is materially distinguishable in my mind because he was present. There were some language difficulties. Judge Matthews says that it was conducted in part or all in Spanish. Those are difficulties. Nevertheless, at this point in the record though, I think if you look at the magistrate's report and recommendation adopted by the district court, that she finds that under Leon, that there's no advocation by the magistrate who ruled that there was a probable cause. It would have been permissible for him to say that he got this information from a confidential informant whose reliability in our department has been verified. Absolutely. And then that would have ended it. As defense counsel started out at the very beginning by saying that this whole thing could have been cured if he would have just simply added that one little piece. Sort of a technicality. In my mind. And so that's where I think the second prong of Frank's, as you pointed out, I think we really have to look at was it intentionally, recklessly false. I think we can agree that it was false and that it was a mistake. However, in this case, I think that if you look at what the magistrate had before, when it was simply not a bare bones affidavit, it sets forth adequate probable cause. Even if you excised out all of the information regarding the prior reliability and simply focused on the fact that the confidential informant had observed the hand-to-hand delivery in the car and then corroborated by the surveillance that took place, one of the things that we often look at is if you take out the infected part, the false part, what do you have that's left? You still have probable cause in this case. If we accept your argument, where do we draw the line? Are we going to endorse sloppy work by policemen and say, oh, no harm, no foul. He lied, but we all know that, gosh, there was probable cause. I mean, if we come out with an opinion that says, hey, it's okay, is that going to send a signal to policemen that they can be sloppy about putting their affidavits together for search warrants? I mean, where do we draw the line? Where do we distinguish that it's okay here, but you can't keep doing this? Well, that was the whole, as we went from Aguilar Spinelli to Illinois v. Gates and then ultimately with Leon, all of these things, that is the legitimate concern, is if you look at the totality of the circumstances, if you allow for good faith to apply, even if there were defects, are you in fact condoning it? And I think that this case is different in the sense that the falsehood as to that technical aspect, ultimately it was not untrue. Ultimately, the defendant was observed walking out of his house with a full ounce of cocaine and handing it to the passenger. And so it would be different in my mind that if the falsity extended to something that just was flatly not accurate in the sense that the overall thing that the magistrate would have had to relied upon to determine probable cause. Should the case be remanded for the magistrate judge to make a determination as to whether it was reckless and willfully? That is certainly a possibility. Although, as I stated, I believe that if you read the magistrate's report and recommendation, that by applying Lee on good faith, I think there's a strong current in there that suggests that the implicit finding that it was not intentionally or recklessly made. But you said also that if we excise those statements that are false, that the affidavit would still support probable cause. Absolutely, Your Honor. And I think that's the strongest point here, is that we have corroborating information set up. It's not as if Detective Parkinson simply took that one piece of information and went and got a search warrant based on it. Here we have additional information that goes to the issue of veracity and reliability, even absent that untruthful or imprecise section of the affidavit. Can I ask a really sort of basic question? When someone gives an affidavit like this, is it someone from the Justice Department? Is there a lawyer there? I mean, or does this affiant just on his own come up with one? How did this go down? This was a state case, Your Honor. Oh, it was a state case? Yes, it's San Antonio Police Department detectives in a state case. Okay. And so we, the U.S. Attorney's Office, was on the prosecution end but not prior. My understanding was that the case came to us after the fact. So normally, as you know, there is often an ongoing investigation, and depending on the circumstances, certainly there is review and coordination as possible. But I can't say that's outside the record here, but I believe that this was a state case. Okay, Mr. Gate. Thank you very much. We will hear next from James Alexander Norman Smith. And rebuttal, representing the defendant. Good morning, Your Honors. May it please the Court. My name is Alex Smith. And in the period of time here that I've got on rebuttal, I'd just like to address some points brought up by Mr. Gay that we've touched on earlier. First, what I'd like to discuss is the good faith exception and why it does not apply and why it cannot apply in this case. Judge Matthey, in her recommendation and report, determined that there were no false statements in Detective Parkinson's search warrant affidavit. But alternatively, if they were false, the same attorney and police officers were entitled to rely on the good faith exception. The good faith exception comes from Leon. And in that case, there was an extensive investigation in California about marijuana smuggling. And upon submitting their investigative work to the police, to a magistrate out there, they issued the warrant and made a substantial bust. On appeal, on review, the Supreme Court found that there was insufficient probable cause to actually grant that warrant in the first place. But they weren't going to penalize the police officers for doing their job correctly. So that opinion really articulates whose job it is to make the probable cause determinations in this whole process. It's left up to the neutral and detached magistrate. It is not something that police officers are charged with doing. And so what that exception provides for is for a police officer to carry out their work. And even if the magistrate makes an error, they're still allowed to do their job and go forward with an arrest and search and seizure. I'd like to just circle back also to the statements made in the search warrant affidavit and just state why, from my perspective in reading of the record, they are false. In the search warrant affidavit, Detective Parkinson mentions that a confidential informant against CI2 saw cocaine in Mr. Ortega's home. Only after a hearing on this matter do we come to understand that it was actually an observed purchase and the allegation of a purchase that Person 4, we come to identify who was not mentioned in the search warrant affidavit, observed Mr. Ortega walking from his house to a vehicle. Now, we have the benefit of that information after the fact, and I suppose a logical inference can be drawn that if somebody walked directly from their house to a vehicle with cocaine, that cocaine might have been in their vehicle at one point, or excuse me, in their house at one point. But we don't know if there's still cocaine in that house. And furthermore, the magistrate who receives that search warrant affidavit doesn't have the benefit of understanding that. They just read that, well, somebody, a confidential and reliable informant is telling me that someone saw cocaine in the house. That's a lot different than what actually happened, and that makes that statement false. A second. Could good faith apply to that? I mean, he did not, the informant did not see cocaine in the house, but he saw the accused walk out of the house with cocaine. I mean, isn't that a good faith? I, you know, Your Honor, I don't think it is. And I think it's, the good faith exception cannot apply, because an officer who routinely does this should know that attesting to firsthand personal information is different than what occurred here. It's, we really want to be careful on these process issues and any potential shortcuts I think that officers can take, because we do want to avoid the outcome articulated in Leon and the progeny where the magistrates become rubber stamps and that whole discussion. I mean, it's a very sensitive issue for these people's Fourth Amendment rights. My time is winding down. Again, Your Honors, we just ask again for the relief stated in our brief that we reverse the sentence of judgment to the trial courts and remand this for a new trial. Thank you, Mr. Smear. Thank you.